ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

ARIES MARINE CORPORATION, Defendant–Appellee.

No. 90–2447.

United States Court of Appeals, Fifth Circuit.

June 3, 1991.

---

Mark C. Clemer, Brown, Sims, Wise & White, Houston, Tex., for plaintiff-appellant.

Robert D. Green, Houston, Tex., for defendant-appellee.

Before REAVLEY, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this case, we decide whether an excess maritime policy insurer is entitled to reimbursement of funds basically equivalent to the policy's retained limit, which the company paid on behalf of its insured. The district court denied the excess insurer's motion for summary judgment and entered judgment for the insured on the ground that the insurer was estopped to seek reimbursement. 736 F.Supp. 1447. There being no genuine issue of material fact and the excess insurer being entitled to judgment as a matter of law, we reverse and render as to liability and remand for a determination of damages.

I.

The relevant facts are undisputed and simple. In the fall of 1982, Fred M. Lynch was injured while working aboard a vessel owned and operated by Aries Marine Corporation (Aries). Lynch filed suit against

Aries and other parties in Texas state court. Aries' primary insurer, Glacier General Assurance Company, initially defended the *Lynch* suit. As is all too common, however, the primary insurer became insolvent, requiring Aries to defend itself.

In the first days of trial, Lynch was demanding $4,000,000 to settle the case. By the close of evidence, Lynch had reduced his demand to $1,745,000. Aries' excess insurer, Arkwright–Boston Manufacturers Mutual Insurance Company (Arkwright), had been participating in the case to protect its excess coverage for claims ranging from $500,000 primary insurance up to $20 million. When Arkwright undertook to settle the case for the lower amount, Aries voiced no objection.

Other defendants in the suit agreed to contribute $763,000 toward the settlement, leaving $982,000 to be paid by Aries and Arkwright. In accordance with the provisions of the Arkwright policy, Arkwright made demand on Aries to contribute $500,-000, the equivalent of the primary coverage, to the settlement. Aries apparently thought that the excess insurance policy "dropped down" in place of the policy issued by its insolvent primary insurer, thereby requiring Aries to contribute only $25,000, its primary coverage deductible, to the settlement. When Aries refused to contribute more than $25,000, Arkwright decided that, rather than allow the *Lynch* settlement to fall through, it would fund the entire settlement and then seek recovery from Aries for the remainder of the $500,000 retained limit at a later date. Consistent with this position, Arkwright sent a letter to Aries before the funds were disbursed to Lynch, advising Aries that it would be held responsible for paying the retained limit.

After consummating the settlement, Arkwright brought suit for reimbursement and filed a motion for partial summary judgment seeking a declaration of Aries' liability. The district court, reasoning that Arkwright was estopped to recover the retained limit, denied this motion and, on its own motion, dismissed the suit. Arkwright appeals.

## II.

The district court purported to dismiss this case under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The judgment, however, states that "[s]ummary judgment was granted" to Aries, and the analysis in the court's opinion plainly relies on evidence outside the pleadings. Thus, the court rendered a summary judgment and our appellate review is based on that standard. *Estate of Smith v. Tarrant County Hosp. Dist.*, 691 F.2d 207, 208 (5th Cir. 1982). To prevail on appeal from a summary judgment, a party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Phillips Oil Corp. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1988). Because the essential facts are not in dispute, our review is limited to whether Aries or Arkwright is entitled to judgment as a matter of law.

Arkwright makes much of the fact that the district court entered summary judgment for Aries *sua sponte*. Our cases have not uniformly addressed the authority of district courts to enter summary judgment in favor of a party who does not request it. One line of cases holds that a district court may enter summary judgment *sua sponte* provided the losing party has been given adequate notice and opportunity to respond. *See, e.g., McCarty v. United States*, 929 F.2d 1085 (5th Cir.1991); *Matter of Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir.1989); *Page v. DeLaune*, 837 F.2d 233, 238 (5th Cir. 1988); *British Caledonian Airways v. First State Bank*, 819 F.2d 593, 595 (5th Cir.1987); 10 A.C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983). An earlier line of cases holds that a district court may *never* enter summary judgment *sua sponte. See, e.g., John Deere Co. v. American Nat'l Bank*, 809 F.2d 1190, 1192 (5th Cir.1987); *Clark v. Tarrant County, Texas*, 798 F.2d

736, 741 (5th Cir.1986); *Capital Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387 (5th Cir.1980). The Supreme Court's recent decision in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) strongly supports the former proposition. As the Court stated: "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326, 106 S.Ct. at 2554. It thus appears that our earlier cases can no longer be relied upon, and district courts can definitely grant summary judgment *sua sponte,* upon proper notice to the adverse party. The extent of notice of Aries' affirmative estoppel defense received by Arkwright here becomes irrelevant, however, because the district court erred on the merits of its determination.

### III.

■ Insurers are estopped to deny coverage to their insureds in certain circumstances. The paradigm estoppel situation occurs when the insurer assumes the insured's defense of a claim arguably not covered by the policy without reserving its right to deny coverage. After losing the litigation, the insurer refuses to pay the claimant on the ground of non-coverage and suggests that the claimant collect from the insured. Estoppel is predicated upon the insurer's conflict of interest: it is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage. *Employers Mutual Liability Ins. Co. v. Sears, Roebuck & Co.,* 621 F.2d 746, 747 (5th Cir.1980); *Pacific Indemnity Co. v. Acel Delivery Serv.,* 485 F.2d 1169, 1173 (5th Cir.1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974).

To avoid the conflict that gives rise to estoppel, it has been held that an insurer may undertake the insured's defense and later deny coverage if it "reserves its rights" by advising the insured that it may interpose a policy defense following adjudication of the claimant's suit against the insured. *See City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d 1052, 1061 (8th Cir.1979); *Pacific Indemnity Co. v. Acel Delivery Servs., Inc.,* 485 F.2d 1169, 1173 (5th Cir.1973). The insured, confronted by notice of the potential conflict, may then choose to defend the suit personally.

Arkwright argues that the duty to disclaim coverage or reserve rights is a part of the duty to defend. Thus, it urges that the failure to reserve rights cannot give rise to estoppel if the insurance carrier has no duty to defend. *See Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977). Aries concedes that Arkwright's policy did not require Arkwright to undertake Aries' defense. Independent counsel represented Aries throughout the trial of the *Lynch* suit, and Arkwright did not directly participate in the litigation. Nevertheless, Aries argues, and the district court found, that Arkwright's orchestration of the *Lynch* settlement constituted an assumption of Aries' defense.

We have found no authority for the proposition that an insurer's participation in settlement negotiations, where the insured has retained independent counsel, is tantamount to assuming the assured's defense. The principal case relied upon by Aries, *Pendleton v. Pan American Fire & Casualty Co.,* 317 F.2d 96 (10th Cir.), *cert. denied,* 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963), is readily distinguishable from the instant case. In that case, the court found that the insurer had assumed the defense not because it took control of the settlement negotiations, but because it "employed two lawyers to defend" Pendleton and maintained "full control of the litigation ... up to the time of settlement, when it, in effect, abandoned him." *Id.* at 100. *Pendleton's* conclusion in no way supports a finding that entering settlement negotiations *during a trial being conducted by the assured's attorneys* is tantamount to assuming the assured's defense.

■ Aries was aware of and present during Arkwright's settlement negotiations with Lynch. Aries even negotiated with Arkwright concerning possible terms for

funding the settlement. In addition, when Lynch finally agreed to a settlement, which relieved Aries of significant exposure to an adverse jury verdict, Aries never made any objection, nor did it claim that the settlement was unreasonable or ask the state court not to authorize it. Under these circumstances, an insured's participation in settlement negotiations does not constitute an assumption of the assured's defense. Accordingly, Arkwright's alleged failure to reserve its rights cannot give rise to an implied promise of coverage upon which to base estoppel. *See* 16C J. Appleman, *Insurance Law & Practice*, § 9365 p. 559 (1981) ("an insurer's participation in conferences looking toward settlement does not estop the company from denying liability, nor constitute a waiver of a defense").[1]

### IV.

Although we have concluded that estoppel is inapplicable in this case, this does not end the inquiry. Arkwright moved for summary judgment to hold Aries liable under the policy. Having disposed of Aries' affirmative defense, we turn, for the sake of judicial economy and in the absence of fact issues, to the merits of this claim. *See Panasonic Co. v. Zinn*, 903 F.2d 1039, 1040, 1043 (5th Cir.1990).

It is undisputed that Arkwright contributed all but $25,000 to Aries' portion of the *Lynch* settlement. Nevertheless, Aries advances several arguments in support of its claim that Arkwright is not entitled to recover the retained limit. First, Aries argues that its retained limit is $25,000 rather than $500,000 because it "was not covered by underlying insurance." At issue is the interpretation of language in the excess insurance policy that defines the limits of Arkwright's liability:

2. Limits of Liability—Underwriter shall only be liable for the excess of either—

(a) The amount of the limit(s) set out in underlying insurances identified in the attached schedule, ... or

(b) $25,000. Ultimate Net Loss in respect of each occurrence not covered by said underlying insurances (all hereinafter called the "underlying limits").

The question before us is the grammatical reach of the phrase "in respect of each occurrence *not covered* by said underlying insurance." Aries admits that the Glacier policy "provided for coverage up to a limit of $500,000 per claim, per vessel." Aries further admits that the Glacier policy covered Aries for Lynch's injuries aboard the M/V RAM VII. Nevertheless, Aries contends that it was not "covered" by underlying insurance because Glacier became insolvent before fulfilling its insurance duty. This argument ignores the distinction between "coverage" and "collectibility."

The plain language of the Arkwright policy provides that Aries' retained limit drops down to $25,000 only if an occurrence is *not covered* by underlying insurance. Lynch's claim, however, was covered by underlying insurance. The fact that the insurance was not collectible because of Glacier's insolvency is irrelevant.[2] As we said in *Mission National Insurance Co. v. Duke Transportation Co.*, 792 F.2d 550 (5th Cir.1986):

When an excess insurer uses the term "collectible" or "recoverable" it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable; on the other hand, when an excess insurer uses the term "covered" or "not covered," it is agreeing to drop down only in the event that the terms of the underlying policy do not

---

**1.** *See also Wilkerson v. Maryland Casualty Co.,* 119 F.Supp. 383, 386 (E.D.Va.1953) (negotiations by insurer for possible settlement held not to constitute waiver of insurer's rights), *aff'd,* 210 F.2d 245 (4th Cir.1954); *Jacksonville Adjustment Bureau v. National Ben Franklin Fire Ins. Co.,* 1 F.2d 800, 801 (S.D.Fla.1924) (insurer's negotiations for settlement held not to give rise to estoppel).

**2.** Indeed, the selection of a primary insurer rested exclusively with Aries, not Arkwright, and Aries offers no sound reason for placing the risk of the primary insurer's insolvency on the excess insurer.

provide coverage for the occurrence or occurrences in question. *Id.* at 552–53. *See also Transco Exploration Co. v. Pacific Employers Insurance Co.,* 869 F.2d 862, 865 (5th Cir.1989). Accordingly, we hold that Aries' retained limit is $500,000.

■ Aries next argues that Arkwright is not entitled to reimbursement because Arkwright settled the *Lynch* suit as a "volunteer." This claim is equally unavailing. Texas law does provide that "money voluntarily paid with full knowledge of all of the facts ... cannot be recovered back, although it was paid upon a void or illegal demand or upon a claim which had no foundation in fact and was paid without consideration." *Tyler v. Tyler,* 742 S.W.2d 740 (Tex.App.—Houston [14th Dist.] 1987, writ denied). Assuming, but not deciding, that this doctrine would be incorporated in federal maritime insurance law, this rule only applies when there appears "an intention on the part of the payor to waive his rights." *Onaway Transportation Co. v. Offshore Tugs, Inc.,* 695 F.2d 197, 201 (5th Cir.1983); *Gulf Oil Corp. v. Lone Star Producing Co.,* 322 F.2d 28, 31 (5th Cir. 1963); *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971). Here, Aries was well aware before the *Lynch* settlement was bound that Arkwright intended to fund the settlement without prejudice to its right to recover the retained limit. This negates any claim of waiver.

■ Moreover, as the Tenth Circuit has observed, a payment is not "voluntary" if there is a "reasonable or good faith belief in an obligation or personal interest in making the payment." *Weir v. Federal Insurance Co.,* 811 F.2d 1387, 1395 (10th Cir.1987). In this case, Arkwright reasonably believed that it was furthering its own personal interests in paying Aries' retained limit. Arkwright recognized that its exposure in the *Lynch* suit was between $2,000,000 and $5,000,000, with no practical probability of avoiding liability. Accordingly, Arkwright paid Aries' retained limit to Lynch because it did not want the settlement to fall through, possibly resulting in a jury verdict far in excess of the $982,000 settlement agreement. Aries' claim that Arkwright acted as a volunteer is therefore without merit.

■ Aries finally argues that Arkwright is not entitled to seek reimbursement because when a defendant settles a lawsuit, he "buys his peace" and cannot thereafter seek contribution from a co-defendant. Aries is correct in its contention that a joint tortfeasor who settles with an injured party cannot seek contribution from a non-settling tortfeasor. *See Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 21 (Tex.1987). However, Arkwright is an insurer, not Aries' joint tortfeasor. As such, Arkwright's entitlement to reimbursement stems not from Aries' negligence, but rather from Aries' contractual duty to contribute its retained limit to what it admits was a reasonable settlement. Arkwright's claim against Aries is not vitiated by the rules respecting joint tortfeasors.

## V.

For the foregoing reasons, Arkwright is entitled to judgment as a matter of law. Accordingly, we REVERSE the district court's summary judgment in favor of Aries and RENDER judgment for Arkwright as to liability. Arkwright is entitled to $475,000, less Aries' reasonable costs in defending the *Lynch* suit, which Arkwright has agreed to pay. The case is REMANDED for a determination of damages.