**Randy HUBBARD, Plaintiff,**

v.

**STATE MUTUAL LIFE ASSURANCE COMPANIES OF AMERICA and Risk Funding Alternatives, Inc., Defendants.**

No. 1:93–CV–223.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 14, 1993.

Kenneth W. Lewis and Brett Scot Thomas Bush, Lewis, Ramsey & Roebuck, Beaumont, TX, for plaintiff.

Andrew George Jubinsky and Stephen Dale Howen, Figari & Davenport, Dallas, TX, for State Mut. Life Assur. Companies.

Roger W. Anderson, Conner, Gillen Yarbrough & Anderson, Tyler, TX, for Risk Funding Alternatives, Inc.

## MEMORANDUM OPINION AND ORDER

SCHELL, District Judge.

CAME ON TO BE CONSIDERED Plaintiff's motion to remand and Defendants' motions to dismiss and for summary judgment. After reviewing the motions, the supplemental motions, the responses for and against each motion and supplemental motion, the affidavits submitted by the defendants, and the pleadings of record, the court is of the opinion that Plaintiff's motion should be **DENIED** and Defendants' motions for summary judgment should be **GRANTED.**

## BACKGROUND

Randy Hubbard filed suit against Risk Funding Alternatives, Inc. (hereinafter "Risk Funding") and State Mutual Life Assurance Companies of America (hereinafter "State Mutual") on March 31, 1993 in the 163rd Judicial District Court of Orange County, Texas. Hubbard seeks to recover medical expenses, purportedly covered by an employee benefit plan, that he incurred while he was in the employ of Custom Vessel Company (hereinafter "Custom Vessel"). Custom Vessel went into bankruptcy in January of 1993. Risk Funding was responsible for administering Custom Vessel's self-insured employee benefit plan (hereinafter the "Plan") from August 15, 1990, until September 1, 1992. From September 1, 1992, until November 17, 1992, State Mutual was responsible for the administration of the Plan. Hubbard alleges that Risk Funding and State Mutual both breached insurance contracts by failing to provide coverage of his medical expenses. Hubbard also alleges that both Risk Funding and State Mutual violated the Texas Deceptive Trade and Practices Act, engaged in unfair insurance practices in violation of the Texas Insurance code, and breached their duties of good faith and fair dealing in handling his claims. In the alternative, Hubbard alleges a cause of action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (hereinafter "ERISA") against State Mutual and Risk Funding for nonpayment of his claims for medical benefits.

Risk Funding was served with citation and a copy of the state petition on April 20, 1993. With the consent of State Mutual, Risk Funding removed the case on May 14, 1993. Risk Funding and State Mutual contend that this court has original jurisdiction of Hubbard's claims because the claims relate to an employee benefit plan that is governed by ERISA. Risk Funding and State Mutual filed, along with supporting affidavits, a motion for summary judgment and a motion to dismiss Hubbard's state law claims on the basis that any claims relating to Custom Vessel's employee benefit plan are governed solely by ERISA.

On June 7, 1993, the Court noticed all parties, pursuant to Federal Rules of Civil Procedure 56 and 12(b)(6), that it would consider evidence outside the pleadings and could treat State Mutual's motion to dismiss as a motion for summary judgment. Each party was allowed until June 22, 1993 to submit additional evidence. Hubbard then filed a motion to remand the case arguing that his state law claims are not preempted by ERISA because there was never any

funding of the Plan by Custom Vessel, and therefore the Plan does not constitute an "employee welfare benefit plan" under ERISA. Consequently, he asserts that removal was improper and jurisdiction rests in Orange County, Texas state court. Thereafter, on June 17, 1993, Risk Funding filed its motion for summary judgment with supporting affidavit.

## ANALYSIS

### I. REMOVAL OF ERISA CLAIMS

■ Removal is proper for "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States...." 28 U.S.C. § 1441(b). Hubbard has plead his claims against Risk Funding and State Mutual under Texas state law. Generally speaking, "[r]emoval is not possible unless the plaintiff's 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1017 (5th Cir.) (*citing Louisville & N.R. Co. v. Motley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)), *cert. denied,* — U.S. ——, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993). Further, "federal preemption is a defense to a claim, and 'does not appear on the face of a well pleaded complaint, and therefore does not authorize removal to federal court.' " *Id.* (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). However, "[a]n exception to the well pleaded complaint rule has been carved out for those areas in which Congress has 'so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' " *Id.* (*quoting Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546). Benefit claims brought by participants and beneficiaries of ERISA-regulated employee benefit plans involve one such area that has been carved out by Congress. *Id.; See* 29 U.S.C. § 1144(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55–56, 107 S.Ct. 1549, 1557–1558, 95 L.Ed.2d 39 (1987).

■ ERISA § 1002 defines employee benefit plans as:

> .... any plan, fund, or program..... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ..... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). Thus, ERISA regulates and governs employee benefit plans that " 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co.*, 481 U.S. at 44, 107 S.Ct. at 1551 (*quoting* 29 U.S.C. § 1002(1)). Further, "[s]tate law claims are 'related to' employee benefit plans, and hence are preempted, if the state claim has 'a connection with or reference to such a plan.' " *Rodriguez*, 980 F.2d at 1017 (*quoting Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).

Hubbard does not dispute that the Plan, administered at different times by both Risk Funding and State Mutual, furnished benefits generally provided by an ERISA plan. Instead, Hubbard argues that the Plan was never *established* as required by § 1002(1) because Custom Vessel never funded the Plan. Risk Funding and State Mutual argue that funding is not required to establish a plan. Both defendants argue that by entering into a contract to provide administrative services for § 1002(1) benefits, an "employee welfare benefit plan" was established by Custom Vessel for purposes of ERISA. Further, Risk Funding alleges that the Plan it administered from August, 1990 to September, 1992 *was funded* pursuant to the contract it entered into with Custom Vessel. Therefore, the court must determine if the Plan administered by State Mutual and Risk Funding for Custom Vessel was "established" or "maintained," through the purchase of insurance or otherwise, "for the

purpose of providing" Custom Vessel employees with benefits described in § 1002 of ERISA. If the court so finds, then clearly ERISA preempts all of Hubbard's claims, this court has jurisdiction, and dismissal, or in this case summary judgment, on Hubbard's state law claims is proper.

## II. EXISTENCE OF ERISA PLAN

■ "Whether a particular plan falls within the statutory definition [of an 'employee welfare benefit plan'] is a question of fact." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 353 (5th Cir.1993). This factual determination requires the court to make a three-part inquiry. First, the court must determine if a plan exists. *Id.* at 355. "To measure the materiality of a purported plan ... a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedure for receiving benefits." *Id.* Second, the court must apply the safe-harbor provisions prescribed by the Department of Labor. *Id.* The Department of Labor, pursuant to authority granted by Congress, has promulgated regulations providing that certain insurance and other benefit plans are excluded from ERISA coverage. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir.1991). If a plan meets these so-called safe-harbor provisions, ERISA does not cover the plan and the inquiry ends. *Id.* (*citing Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 351 (5th Cir. 1991), and *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir.1991)). However, if a plan does not meet the safe-harbor criteria, the court must make a third inquiry and determine if the plan meets the Fifth Circuit criteria which determines what plans are covered by ERISA. *Id.* The third inquiry requires the court to decide if the plan is established or maintained by an employer with the intent to benefit employees. *Meredith* at 355.

### A. Characteristics of the Plan

Hubbard does not dispute that the Plan existed. Risk Funding and State Mutual both contracted to provide services for an employee benefit plan for Custom Vessel.

Information about the Plan was prepared by Risk Funding and State Mutual and distributed to Custom Vessel employees. Apparently, Risk Funding and State Mutual actively administered the Plan, but at different times. The court finds, based on the uncontroverted affidavits and attachments submitted by Risk Funding and State Mutual, that a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits under the Plan, and therefore the Plan did exist.

### B. Department of Labor Regulations

Department of Labor regulations provide that the term "employee welfare benefit plan":

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j). Group insurance plans meeting *each* of these criteria are excluded from ERISA's coverage. *Hansen,* 940 F.2d at 977; *Kidder,* 932 F.2d at 351; *Gahn,* 926 F.2d at 1452; *Memorial Hosp. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 241 n. 6 (5th Cir.1990).

Hubbard does not dispute that the Plan fails to meet the Department of Labor's safe-harbor requirements. Custom Vessel, the employer, was responsible for contributions and payments under the Plan. (see Risk Funding's Supplemental Motion to Dismiss, Motion for Summary Judgment and Response to Plaintiff's Motion to Remand with Supporting Affidavit and Brief; see also Affidavit in Support of State Mutual's Motion to Dismiss). Further, the role and responsibilities assumed by Custom Vessel greatly exceeded the minimal functions set out in the Department of Labor's regulations. (*id.*) Clearly, the Plan does not meet the first or third criteria of the safe-harbor provisions.

## C. Established or Maintained

As outlined above, the third inquiry of the *Meredith* test requires the court to determine if a plan was established or maintained by an employer intending to benefit employees. *Meredith*, 980 F.2d at 355. The *Meredith* court held that in order for a plan to fall within the broad parameters of ERISA, the court must "look to the 'two primary elements of an ERISA "employee welfare benefit plan" as defined by the statute: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees.'" *Id.* (*quoting MD Physicians & Assoc. v. State Bd. of Ins.*, 957 F.2d 178, 183 (5th Cir.1992)); *see also Hansen*, 940 F.2d at 977.

In *Foxworth v. Durham Life Ins. Co.*, 745 F.Supp. 1227, 1230 (S.D.Miss.1990), the court interpreted *Memorial Hospital* as holding that in order for an employee welfare benefit plan to exist, the employer must intend to benefit employees *and* carry out that intent through the provision of benefits of the nature described in 29 U.S.C. §§ 1002(1) and (2) (health, disability, pension, etc.) pursuant to an organized program. *Id.* The district court characterized an organized program as "a program whereby 'a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.'" *Id.* (*quoting Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982)); *see also Gahn*, 926 F.2d at 1452, and *Hansen*, 940 F.2d at 978.

Hubbard contends that Custom Vessel never funded the Plan and therefore did not have the requisite intent to benefit employees or maintain an employee benefit plan that would be governed by ERISA. (see Plaintiff's Combined Response to State Mutual and Risk Funding Motions to Dismiss, p. 3–4). Hubbard maintains that as the nonmovant in a summary judgment proceeding, the evidence is to be viewed in a light most favorable to him. Hubbard insists that there is a fact question regarding Custom Vessel's intent to establish an employee welfare benefit plan and that granting the defendants' motions for summary judgment would be inappropriate. Risk Funding and State Mutual argue that funding is not required to establish an employee welfare benefit plan. Risk Funding also maintains that Custom Vessel did in fact fund the Plan pursuant to the terms of its contract with Risk Funding. The court will address these arguments and apply the third step of the *Meredith* test to the summary judgment evidence.

## III. APPROPRIATENESS OF SUMMARY JUDGMENT

The Supreme Court has recognized that district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party is on notice that it has to come forward with all its evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The Fifth Circuit embraced and endorsed this principle in *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442 (5th Cir.1991). In this case, after receiving evidence from the defendants in support of motions to dismiss Hubbard's state law claims, the court noticed all parties on June 7, 1993, that it could treat State Mutual's motion to dismiss as a motion for summary judgment. The parties were given until June 22, 1993, more than ten days, to submit additional evidence. The grounds for summary judgment, as evidenced by the motions to dismiss and Hubbard's responses, were clearly understood by all parties. On June 17, 1993, Risk Funding filed its motion for summary judgment.

■ Because State Mutual's motion to dismiss was converted to a motion for summary judgment, and Risk Funding filed its own motion for summary judgment, Risk Funding and State Mutual have the burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). When the moving party bears the burden of proof on a claim or defense upon which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir.1991). To defeat a properly supported motion for summary judgment, the nonmovant must adduce affirmative evidence that shows there is a genuine issue of material fact. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15. It is not enough for the nonmovant to argue in the abstract that the legal theory involved in a case encompasses some factual questions. *Pennington v. Vistron*, 876 F.2d 414, 426 (5th Cir.1989). Nor may a party rely on the mere allegations of his pleadings to create a genuine issue of material fact. *Id.* (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

Risk Funding argues that Custom Vessel did establish the Plan with the intent to benefit is employees. Risk Funding has provided, as part of the sworn affidavit of Carl Owens, supporting attachments including a copy of the service agreement entered into by Risk Funding and Custom Vessel (hereinafter "Risk Funding Service Agreement"), the Plan Risk Funding helped administer, and the Summary Plan Description that was prepared and distributed to Custom Vessel employees. In his affidavit, Carl Owens, vice-president of Risk Funding, states that Custom Vessel did fund and establish the Plan pursuant to the Risk Funding Service Agreement to provide Custom Vessel employees with medical benefits. (see Affidavit in Support of Risk Funding's Motion to Dis-

miss, Motion for Summary Judgment and Response to Plaintiff's Motion to Remand). Hubbard has provided no contradictory evidence.

■ An examination of this evidence shows that clearly an organized program was put in place to provide benefits for the employees of Custom Vessel. The documentation submitted by Risk Funding allows a reasonable person to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits under the Risk Funding Plan. The alleged lack of funding of the Plan is Hubbard's only *argument* disputing the establishment of an employee welfare benefit plan by Custom Vessel under the Plan. Hubbard has produced no summary judgment evidence to contradict Owens' testimony that Custom Vessel did fund and establish the Plan for the purpose of providing its employees with medical benefits. Hubbard has failed to meet his burden of creating a genuine issue of material fact regarding the funding or establishment of the Plan for the purpose of benefitting Custom Vessel employees.

The court finds from the undisputed summary judgment evidence in the form of Carl Owens' affidavit and the affidavit of Eric C. Hall submitted by State Mutual that Custom Vessel did establish the Plan with the intent to provide benefits to its employees. Consequently, the court concludes that there is no genuine issue as to any material fact concerning the existence of an ERISA plan.

## CONCLUSION

Having established the existence of an "employee welfare benefit plan" under ERISA, all state law claims asserted by Hubbard that "relate to" the Plan are preempted by ERISA. 29 U.S.C. § 1144(a). Therefore, the plaintiff's claims for breach of contract, breach of the duty of good faith and fair dealing, for violation of the Texas Deceptive Trade Practices Act, for violation of the Texas Insurance Code, for attorneys fees under these state statutes and for exemplary damages are preempted and summary judgment in favor of the defendants on those claims is **GRANTED.** This court has jurisdiction over

the plaintiff's claim for benefits under ERISA set forth in paragraph XI of his state petition, and, therefore, the plaintiff's motion to remand is **DENIED.**

Finally, defendant State Mutual makes a brief, one paragraph argument in its June 17, 1993, reply that because it served as a third-party administrator of the Plan, and not as an insurer with the final authority to grant or deny claims, State Mutual cannot be held liable for wrongful denial of benefits under 29 U.S.C. 1132(a)(1)(B). Further, State Mutual contends that as a third-party administrator of a plan self-funded by the employer, it is not a fiduciary and cannot be held liable for breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1105. State Mutual cites no authority for these propositions except the Ninth Circuit case of *Gibson v. Prudential Ins. Co. of America,* 915 F.2d 414 (9th Cir. 1990) announced to the court at the case management conference. However, in that case, it was undisputed that the third-party administrator of a self-funded plan was not a fiduciary under ERISA. Moreover, a "fiduciary" with respect to a plan under ERISA is defined as a person or entity which "exercises *any* discretionary authority or discretionary control respecting management of such plan ... or ... has *any* discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). In view of the broad sweep of this plain language, the court cannot conclude as a matter of law that State Mutual is not a fiduciary in this case without a further motion with supporting authorities submitted by the defendants and an opportunity for the plaintiff to respond.

**SO ORDERED.**