**COREGIS INSURANCE CO., Plaintiff,**

v.

**LAW OFFICES OF CAROLE F. KAFRISSEN, P.C., et. al., Defendants.**

**No. CIV. A. 98–6769.**

United States District Court, E.D. Pennsylvania.

May 9, 2001.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

In 1998, Cynthia Clark brought a legal malpractice suit against Carole F. Kafrissen, Esquire, and the Law Offices of Carole F. Kafrissen, P.C. (collectively, "Kafris-

sen") in the Philadelphia Court of Common Pleas. Kafrissen had previously represented Clark in a medical malpractice action against various health care providers. In response to Clark's suit against her, Kafrissen requested that Coregis Insurance Company ("Coregis"), Kafrissen's malpractice insurance carrier, defend and indemnify her against Clark's claim pursuant to her policy with Coregis. In turn, Coregis undertook Kafrissen's defense, but also filed suit in this court, seeking a declaratory judgment that it was not required to defend or indemnify Kafrissen under the terms of Kafrissen's malpractice policy and requesting rescission of the policy contract. Coregis claimed that Kafrissen's application for malpractice insurance had failed to disclose the existence of Clark's potential claim against her.

Even though Clark's malpractice suit against Kafrissen was stayed in the Court of Common Pleas pending resolution of the coverage question presented in this case, Kafrissen, Clark, and Coregis continued to discuss settlement of Clark's underlying claim. In a letter dated January 13, 2000, Kafrissen's attorney in this case, Ronald Kidd, Esquire, informed Coregis that if Coregis did not discontinue the instant declaratory judgment action, Kafrissen would tender a settlement proposal to Clark on January 14, 2000, the following day. The settlement proposal provided that: (1) Clark and Kafrissen would enter a consent judgment against Kafrissen and in favor of Clark in the amount of $3,000,000; (2) Kafrissen would make no admission of liability to Clark; and (3) Clark would execute a covenant not to execute the judgment against any of Kafrissen's assets. *See* Letter from Kidd to Ball of 1/13/00, at 1. The clear implication underlying the settlement proposal was that following the execution of such a settlement, Clark would be able to proceed against Coregis directly to satisfy the $3 million judgment.

By letter dated the very next day, January 14, 2000, Coregis's attorney took strong exception to the proposed settlement of Clark's claim contained in Kidd's letter. In the letter, Coregis's attorney cited specific language in Kafrissen's policy that expressly prohibited Kafrissen from settling any claims made against her under the policy without Coregis's consent. *See* Defs.' Mot. for Summ. J. on Pl.'s Action for Recoupment/Rescission Ex. D at 2.[1] In addition, Coregis's letter put Kafrissen on notice that, should she agree to the entry of the consent judgment seeking to bind Coregis, Coregis reserved the right to "pursue affirmative relief against Ms. Kafrissen for breach of contract, collusion, breach of the covenant of good faith and fair dealing, and any other remedies Coregis may have against Ms. Kafrissen." *Id.* at 3.

Following this exchange of letters between Kafrissen and Coregis, no consent judgment between Clark and Kafrissen was ever entered, nor did Clark and Kafrissen otherwise reach a settlement of Clark's malpractice claim. Instead, two months later in March, 2000, Coregis and Clark reached a settlement agreement for $1,000,000 in the underlying action, that was contingent upon Kafrissen consenting to the settlement.[2] Kafrissen agreed to

---

**1.** Most importantly, the policy stated that "no INSURED shall, without the prior written consent of the Company, ... admit liability [or] settle any CLAIMS...." *See* Defs.' Mot. for Summ. J. on Pl.'s Action for Recoupment/Rescission Ex. D at 2 (capitalization in original).

**2.** Under the terms of the policy, Coregis was not permitted to settle any claim against Kafrissen without her written consent, provided that such consent was not "unreasonably withheld." *See id.* at 2. Given that Coregis voluntarily made the settlement payment to Clark, *see* discussion *infra*, the presence of the clause in the policy is not material to the

consent to an $800,000 settlement amount, provided that the settlement was "in full and final settlement of *all claims,* including (a) Cynthia Clark's claims against Carole Kafrissen and Carole F. Kafrissen, P.C. in the underlying legal malpractice action in the Court of Common Pleas of Philadelphia County and (b) Coregis's claims against Carole Kafrissen and Carole F. Kafrissen, P.C. in [the instant case]." *See* Defs.' Mot. for Summ. J. on Pl.'s Action for Recoupment/Rescission Ex. F (emphasis in original).

Despite Kafrissen's refusal to consent to the settlement without Coregis's agreement to drop its claim for rescission of its policy with Kafrissen, Coregis subsequently entered into a settlement with Clark dated April 14, 2000 in which Coregis agreed to pay Clark $800,000 in consideration for Clark's release of all claims against Kafrissen.[3] With leave of the court, Coregis then amended its complaint to seek "recoupment/restitution" from Kafrissen for the $800,000 it paid to Clark pursuant to the April 14, 2000 settlement.

■ Kafrissen now contends in her motion for summary judgment that Coregis is not entitled to recover from her the $800,000 that it paid to Clark to settle Clark's claims against Kafrissen, because Coregis's payment to Clark was a voluntary payment. "[I]t is elementary that one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." *Ochiuto v. Prudential*

*Ins. Co.,* 356 Pa. 382, 384, 52 A.2d 228, 230 (Pa.1947).[4] Coregis argues that Kafrissen's threat to enter into a consent judgment with Clark, that would purportedly expose Coregis to a $3 million judgment, effectively forced Coregis to enter into the settlement with Clark in order to protect itself from the jeopardy of the possible $3 million consent judgment.

■ This argument is entirely without merit. One, the threatened "consent judgment" would not have required Coregis to pay $3 million to Clark. As Coregis's own attorney persuasively stated in his letter to Kidd dated January 14, 2000, the terms of the policy prohibited Kafrissen from entering into such an agreement with Clark and Coregis would have had legal recourse against Kafrissen if she had done so. *See* Defs.' Mot. for Summ. J. on Pl.'s Action for Recoupment/Rescission Ex. D. Two, under Pennsylvania law, absent an insurer's consent to the entry of judgment against the insured, "any judgment secured by the insured cannot be enforced against the insurer." *Sands v. Andino,* 404 Pa.Super. 238, 248 590 A.2d 761, 765 (1991).[5] Therefore, it is clear that, as Coregis pointed out when the subject was first broached in January, 2000, a consent judgment agreed upon by Clark and Kafrissen would have had no legal effect upon Coregis.

■ To the extent that Coregis subjectively believed that the threat of the consent judgment was not illusory but in fact real, a contention the court finds difficult to countenance in light of Coregis's own

disposition of Kafrissen's motion for summary judgment.

**3.** Coregis inexplicably continues to contend that Kidd's March 24, 2000 letter to Coregis constitutes Kafrissen's consent to the settlement. The plain language of the letter could not be any more clear, as Kafrissen's consent was expressly conditioned upon Coregis's agreement to drop its claims against Kafrissen.

**4.** The court in *Ochiuto* also noted that the voluntary payment rule did not apply where the party was subject to duress. *See id.*

**5.** Coregis cites no legal authority for its claim that Kafrissen's threat to enter into a consent judgment would somehow oblige Coregis to pay the amount of the consent judgment.

persuasive letter of March 24, 2000, to Kidd, Coregis would have been mistaken as to the law concerning Kafrissen's ability to bind Coregis under the insurance contract that Coregis had issued to Kafrissen. "[M]oney paid voluntarily, although under a mistake of law as to the interpretation of a contract, cannot be recovered." *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa.Super. 567, 569, 493 A.2d 736, 737 (1985) (citing *William Sellers & Co. v. Clarke–Harrison, Inc.*, 354 Pa. 109, 113, 46 A.2d 497, 499 (Pa.1946)). Accordingly, Coregis cannot recover from Kafrissen the money that it paid to Clark under the mistaken understanding that Coregis's interests could somehow be injured by Clark and Kafrissen agreeing to enter a consent judgment.

■ Coregis also argues that there is an exception to the rule regarding voluntary payments where the payor acts in its own self interest. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 447 (5th Cir.1991); *Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir.1987). According to Coregis, the voluntary payment rule is subject to the exception of "self interest" in addition to fraud and duress. The "self interest" rule concerns the situation where the payor makes a payment while acting in what it believes to be its own self interest. Although it argues forcefully that the "self interest" rule should be applied in this case, Coregis fails to explain the rule's genesis or contours,[6] or even to provide a public policy rationale for applying the rule in this case. Whatever the breadth or pedigree of the "self interest" exception, the parties agree that it has not been applied by any court in Pennsylvania.[7]

In any event, the cases cited by Coregis in support of the "self interest" exception are distinguishable. In *Weir*, the insurer sought to recover from a third party payments it had made to its insured. *Weir* thus presents a typical application of the subrogation doctrine, wherein insurers are permitted to "stand in the shoes" of their insured to make claims against third parties who have caused some injury to insured. Under *Weir*, insurers are protected from waiver of their rights to seek reimbursement from third parties when making prompt payments to their insured in accordance with their fiduciary duties to the insureds. In the instant case, Coregis seeks reimbursement from its insured for payments made to a third party, a much different question than the one presented in *Weir*.[8]

---

**6.** A party would appear to be acting in its own self interest whenever it makes a payment. The self interest exception, if adopted, would therefore swallow the voluntary payment rule.

**7.** For example, the court in *Acme Markets* could have applied the self interest rule. In that case, the plaintiff argued that it was entitled to recover for certain maintenance payments that it made under the mistaken impression that it was obligated to do so under the terms of its lease. The court held that because plaintiff's mistake was a mistake of law rather than of fact, it was not entitled to reimbursement for the payments. *See id.* at 571, 493 A.2d 736. Under Coregis's view, the plaintiff should have been entitled to reimbursement because it was acting out of its self interest in making the payments in order to ensure that its right to occupy the property

that was subject to the lease continued without interruption. The court has no basis for believing that the plaintiff in *Acme Markets* actually made such an argument, but merely makes the point to show the indeterminate scope of the purported "self interest" exception to the voluntary payment rule.

**8.** The court in *Weir* cited 73 Am.Jur.2D *Subrogation* § 25 (1974), in support of the proposition that an insurer's payment is not voluntary when it acts with a "personal interest in making th[e] payment." *Id.* at 1395 & n. 6. The examples of "personal interest" quoted by the court are: (1) "subsequent encumbrancers paying off a prior encumbrance, though only when they do so to protect their own interest;" and (2) "where the payor and his property is obligated and the creditor has

Coregis also relies on *Arkwright,* 932 F.2d at 447, a case from the Fifth Circuit that involved an excess insurer who was forced to defend a claim against its insured when the primary insurer became insolvent. The court in that case found that the claim against the insured was so strong that the excess insurer had "no practical probability of avoiding liability," and thus faced "exposure ... between $2,000,000 and $5,000,000." *Id.* In the instant case, Coregis was under no immediate time pressure to settle, because Clark's action had been stayed pending resolution of Coregis's declaratory judgment action, and the threat of the entry of a consent judgment by Kafrissen was illusory. *See* discussion *supra.* Therefore, Coregis was never faced with the dire and immediate circumstances that forced the insurer in *Arkwright* to settle the underlying claim in that case.

The result reached in this case is supported by the well-reasoned disposition of the Alabama Supreme Court on nearly identical facts in *Mt. Airy Ins. Co. v. Doe Law Firm,* 668 So.2d 534 (Ala.1995) ("*Mt.Airy*"). In *Mt. Airy,* as in this case, an insurance company sought to recover the amount that it had paid a third party to settle a legal malpractice suit brought by the third party against a law firm that had a malpractice insurance policy with the insurance company. The law firm had refused to consent to the settlement nego-

tiated by the insurance company because the insurance company would not agree, as a condition of the law firm's consent to the settlement, that it would waive any right to seek reimbursement from the law firm. The Alabama Supreme Court held that the insurance company was not entitled to recover from the law firm the amount that it paid in the settlement because the insurance company "voluntarily" made the payment, and a voluntary payment in satisfaction of a colorable legal demand on another is not recoverable absent fraud, duress, or extortion. *See id.* at 537.

Coregis attempts to distinguish *Mt. Airy* by pointing out that the law firm in that case did not threaten to cut off the insurer's right to offer a defense against the underlying claim by entering into a consent judgment with the plaintiff in the underlying malpractice claim. As the court has previously discussed, however, even if Kafrissen had entered into the consent judgment with Clark, the judgment would have no legal effect on Coregis because "any judgment secured by the insured [without the insurer's consent] cannot be enforced against the insurer." *Sands,* 404 Pa.Super. at 248, 590 A.2d at 765 (1991). Therefore, the apparent threat by Kafrissen to enter a consent judgment with Clark would not have cut off Coregis's right to offer a defense that it was not required to make payment to Clark based on the underlying claim.[9] Accordingly,

the right to pursue him or his property." *Id.* In the former example, the payor would not be a volunteer where it assumed the role of creditor in order to protect its own interest in a debtor's property. In this case, Kafrissen did not have a preexisting obligation to which Coregis merely assumed the role of creditor. In fact, Coregis *created* the alleged obligation by settling the case with Clark. The latter example cited in *Weir* is not applicable because the payor in this case, Coregis, was not under any obligation to pay Clark. Coregis would only have become liable to Clark if: (1) Clark prevailed in her claim against Kafris-

sen; and (2) this court found that Coregis was not entitled to rescind its insurance contract with Kafrissen. As neither one of these conditions, let alone both, were fulfilled, Coregis was not under any obligation to pay. Therefore, the rationale for the self interest exception to the volunteer rule does not support Coregis's position in this case.

9. Given the Pennsylvania Superior Court's holding in *Sands,* it appears unlikely that any claim brought by Clark against Coregis in an attempt to execute on the judgment would survive a motion to dismiss.

Mt. Airy is not distinguishable from the instant case.

For the reasons stated above, Kafrissen is entitled to summary judgment on Coregis's claim for reimbursement of the $800,000 paid to Clark to settle Clark's claims against Kafrissen.