INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation, Plaintiff,

v.

ARCHDIOCESE OF PORTLAND IN OREGON, an Oregon corporation; Underwriters at Lloyd's, London, subscribing to policies numbered SL 3391/SLC 5411 and SL 3831/SLC 5843; Excess Ins. Co. Ltd., a United Kingdom corporation; Yasuda Fire & Marine Ins. Co. Ltd. (U.K.), a United Kingdom corporation; Terra Nova Ins. Co. Ltd., a United Kingdom corporation; Certain Other Underwriters subscribing to policies SL 3391/SLC 5411 and SL 3831/SLC 5843; and Universal Reinsurance Corp., a New Jersey corporation, successor to Bellafonte Ins. Co., Defendants.

Civ. No. 88–934–FR.

United States District Court, D. Oregon.

Sept. 14, 1995.

William D. Okrent, Acker & Okrent, Portland, OR, Timothy J. McNamara, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, for plaintiff.

Thomas V. Dulcich, Peter A. Ozanne, Schwabe, Williamson & Wyatt, Portland, OR, for defendant Archdiocese of Portland in Oregon.

Milo Petranovich, Lane, Powell, Spears & Lubersky, Portland, OR, Richard F. Johnson, Lord, Bissell & Brook, Chicago, IL, for defendants Underwriters at Lloyd's, London; Excess Ins. Co. Ltd.; Yasuda Fire & Marine Ins. Co. Ltd. (U.K.); Terra Nova Ins. Co. Ltd.; and Universal Reinsurance Corp.

FRYE, District Judge.

The matters before the court are the motions of the plaintiff, Interstate Fire & Casualty Company (Interstate), for summary judgment (# 175) and to strike the affidavit of Barry M. Maletsky, M.D. (# 192).

## FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Fred Grgich sued the Archdiocese of Portland alleging that he had been sexually abused over a period of years by a priest employed by the Archdiocese. At the time that the claim was filed by Grgich, Underwriters at Lloyd's, London, et al. (Lloyd's) was the primary insurer of the Archdiocese, and Interstate was the excess insurer of the Archdiocese. The relevant contracts of insurance provide that the Archdiocese maintain a Self–Insured Retention (SIR) of $75,000 for the years 1979, 1980 and 1981, and $100,000 for the years 1982 and 1983. The policy issued by Lloyd's provides payment for any amount of a covered claim in excess of the SIR payment to the policy limit of $200,000 per occurrence. The Interstate policy provides coverage for any covered claim against the Archdiocese which exceeds the $200,000 limit of the combined Lloyd's/SIR coverage up to the policy limit of Interstate of $5,000,000 per occurrence.

The Archdiocese, Lloyd's and Interstate entered into settlement negotiations with Grgich. On August 11, 1986, before participating in the settlement negotiations with Grgich, Robert H. Phinney, Interstate's Assistant Vice President for Claims, informed counsel for the Archdiocese, Robert W. McMenamin, that it would participate in the settlement negotiations under a reservation of rights. On August 14, 1986, Interstate sent the following letter to McMenamin:

> You, as the general counsel for the insured are put on notice that there is a serious question as to whether or not one or more "retentions" may apply to the Grgich claim, since the molestations occured [sic] over several policy periods....
>
> ....
>
> Based upon the complaint, and the material provided to us, it would appear that the independent actions or failure to act on the part of the Diocesian Officials likewise occured [sic] over a period of years both during Interstates [sic] periods of coverage and prior.
>
> *In engaging in the settlement discussions we are reserving all of our rights with respect to the questions of coverage or reallocation of any settlement money spent by us in the settlement of the Grgich claim on our policies with the Diocese of Portland, Oregon.*

Appendix 1 to Plaintiff Interstate's Memorandum of Law in Support of its Motion For Summary Judgment, pp. 1–2.

On August 19, 1986, the Archdiocese settled Grgich's claim for $500,000. The settlement and defense costs were paid in the following manner:

| $50,000 | — | from Father Laughlin |
| $74,997 | — | from the Archdiocese ($18,000 to Grgich; remainder to fees) |
| $125,000 | — | from Lloyd's |
| $346,909.54 | — | from Interstate ($306,684.81 paid directly to Grgich; and $40,224.73 paid to the Archdiocese for defense costs) |

After the settlement between the Archdiocese and Grgich became final, Interstate filed this action alleging that it was entitled to reimbursement of the $346,909.54 that it had contributed to the settlement fund. Each party filed cross-motions for summary judgment on the issue of reimbursement. This court granted summary judgment in favor of the Archdiocese and Lloyd's. Interstate appealed, and, in an opinion filed on August 30, 1994, the United States Court of Appeals for the Ninth Circuit reversed this court's grant of summary judgment in favor of the defendants, the Archdiocese and Lloyd's, and remanded the case for a determination of whether Interstate had reserved its right to dispute coverage and, if so, to apportion damages.

## CONTENTIONS OF THE PARTIES

Interstate contends that in the letter it sent to the Archdiocese and Lloyd's, it reserved all rights to dispute the number of sexual abuses that occurred, the policy limits, and the policy years that applied to Grgich's damages, as well as the right to seek reimbursement of any amounts it contributed towards the settlement of Grgich's claim. Interstate contends that its participation in the settlement of Grgich's claim cannot be construed as a waiver of its reservation of rights to dispute coverage for the factors listed above. In addition, Interstate argues that it did not need to reserve its right to dispute coverage because it did not defend the Archdiocese and, under the terms of its policy, it had no duty to defend the Archdiocese.

The Archdiocese and Lloyd's agree that Interstate reserved its right to dispute coverage. However, they contend that Interstate subsequently waived its right to dispute coverage when it agreed to the settlement of Grgich's claim for $500,000 with the knowledge that the Archdiocese and Lloyd's considered the Grgich claim to be one occurrence triggering liability under the policy in effect in 1979. The Archdiocese and Lloyd's argue that:

Interstate's *conduct* during the two years before this case was filed, including (a) taking over the negotiations for settlement of Grgich's claims, (b) settling those claims by paying over $300,000 of its own funds, with the Archdiocese contributing only the amount of a single retention, and (c) making "final" payment of over $40,000 for the Archdiocese's defense costs—while at the same time, failing to mention, let alone reassert, its purported reservation of rights—establishes *as a matter of fact* that Interstate abandoned and waived any remaining reservation of rights. Furthermore, this purported reservation of rights, which expressly limited its scope to Interstate's conduct "[i]n engaging in the settlement discussions," had expired by its own terms by Interstate's settlement of Grgich's claims and payment of the covered claims and defense costs in full.

Defendant Archdiocese's Memorandum in Opposition to Plaintiff Interstate's Motion for Summary Judgment, p. 4 (emphasis in original). Lloyd's acknowledges that representatives of Interstate never explicitly withdrew Interstate's reservation of rights or objections to a single Self–Insured Retention. However, Lloyd's argues that discussions between counsel for the parties establishes that Interstate clearly intended to do so.

With regard to the apportionment of damages, Interstate argues that the Archdiocese and Lloyd's are judicially estopped from disputing the indivisibility of Grgich's damages. Interstate argues that, in prior proceedings before this court, the Archdiocese and Lloyd's conceded that Grgich's damages were indivisible. Interstate argues that damages must be apportioned equally among the four policy periods because of the holding of the United States Court of Appeals for the Ninth Circuit that Grgich's exposure to the negligently supervised priest in each of the four policy periods constituted four occur-

rences, and that each policy covers damages stemming from the molestations which occurred during the period that that policy was in effect. The Archdiocese and Lloyd's contend that Grgich's damages can be factually allocated among the four policies in which liability was triggered. The Archdiocese and Lloyd's argue that Barry M. Maletsky, M.D. establishes in his deposition testimony that eighty percent of the damages that Grgich suffered occurred as a result of the sexual contacts that Grgich endured during his sophomore year in high school.

### APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of material fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

### ANALYSIS AND RULING

1. *Reservation of Rights*

■ The policy of insurance purchased by the Archdiocese from Interstate is a policy of indemnification; it is not a liability insurance policy. Under the terms of Interstate's insurance policy, Interstate does not have a duty to defend the Archdiocese. Interstate did not undertake to defend the Archdiocese; Interstate did not file any appearances on behalf of the Archdiocese or Lloyd's because the Archdiocese and Lloyd's were each represented by their own counsel. While Interstate participated in the settlement negotiations relating to Grgich's claim, it did so in order to protect its interests, and it did so only after giving notice to the Archdiocese and Lloyd's that there was no coverage un-

der its insurance policy. Because there was no duty on the part of Interstate to defend the Archdiocese, and Interstate did not defend the Archdiocese, Interstate was not required to reserve a right to dispute coverage.

■ Even assuming that the participation of Interstate in the settlement negotiations constituted defending the Archdiocese, Interstate expressly reserved its right to dispute coverage of the Grgich claim. The letter which Interstate sent to the Archdiocese and Lloyd's on August 14, 1986 was sufficient to notify the Archdiocese and Lloyd's that Interstate disputed coverage, and that it reserved any right it had to question coverage or to seek the reallocation of any monies it contributed to the settlement of Grgich's claim. Interstate never expressly withdrew its reservation of rights. The Archdiocese and Lloyd's argue, nonetheless, that Interstate waived its reservation of rights by its conduct during the settlement negotiations and by making payments pursuant to the settlement agreement.

The court concludes that Interstate did not waive its right to dispute coverage by participating in the settlement of Grgich's claim or by fulfilling its obligations to Grgich under the settlement agreement. To hold otherwise would effectively nullify the usefulness of a reservation of rights which allows an insurer to protect its interests by participating in the defense or settlement of a claim against a person or an entity that is potentially covered under the insurer's policy without relinquishing its right under the policy to contest coverage.

2. *Apportionment of Damages*

■ In its opinion reversing and remanding this case, the United States Court of Appeals for the Ninth Circuit rejected the "first encounter rule" and held that from July 1, 1979 to July 1, 1983, the exposure of Grgich to the negligently supervised priest resulted in covered occurrences in each of the four policy periods. *Interstate Fire & Casualty Co. v. Archdiocese of Portland,* 35 F.3d 1325, 1331 (9th Cir.1994). The Court of Appeals stated that "Grgich's claim implicates four occurrences." *Id.* The Court of

Appeals then remanded the case to this court to allocate damages.

On the issue of the allocation of damages, the Archdiocese and Lloyd's have submitted the affidavit of Barry M. Maletsky, M.D., in which Dr. Maletsky indicates that eighty percent of Grgich's damages resulted from the molestations which occurred in his sophomore year of high school. Interstate moves to strike the affidavit of Dr. Maletsky arguing that his affidavit is not admissible under the standards for the admission of scientific evidence set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *on remand,* 43 F.3d 1311 (9th Cir.1995). The court declines to address whether the testimony by affidavit of Dr. Maletsky meets the standards of scientific evidence set forth in *Daubert* because of the court's conclusion that the Archdiocese and Lloyd's are judicially estopped from contesting the indivisibility of Grgich's injuries and his resulting damages.

■ "Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), quoting *Religious Tech. Ctr. v. Scott,* 869 F.2d 1306, 1311 (9th Cir.1989). Judicial estoppel may be applied where a party asserts a position that is contrary to a position previously asserted by that party in the same or prior proceeding, and the previous position was adopted by the court. *United States v. Garcia,* 37 F.3d 1359, 1366–67 (9th Cir.1994).

In the prior proceedings before this court, the parties agreed that the injuries and resulting damages to Grgich as a result of the molestations were factually indivisible among the policy periods. In ruling on the cross-motions of the parties for summary judgment, this court accepted that undisputed fact. In granting summary judgment in favor of the Archdiocese and Lloyd's, this court stated that it is an undisputed fact that "[t]here is no factual basis upon which to divide the personal injury or damage to Grgich among the various policy years." *Interstate Fire & Casualty Co. v. Archdiocese*

*of Portland,* 747 F.Supp. 618, 621 (D.Or. 1990). This is the law of the case. Since this case was filed on August 15, 1988, the Archdiocese and Lloyd's have taken the position that the injuries suffered by Grgich and the damages that he sustained are factually indivisible over the four policy years. It would be prejudicial and unfair to Interstate to allow the Archdiocese and Lloyd's to submit evidence five years later that Grgich's injuries and resulting damages can be divided among the policy years.

■ Even if the court were to conclude that the Archdiocese and Lloyd's are not judicially estopped from contending that the injuries sustained by Grgich are factually divisible over the four policy periods, the affidavit of Dr. Maletsky is not admissible as expert scientific testimony under the Federal Rules of Evidence. The affidavit testimony of Dr. Maletsky offers no analysis supporting the proffered conclusion that has been subjected to scientific scrutiny. The affidavit testimony of Dr. Maletsky contains only a bare, conclusory statement and offers no facts to support this conclusion. This affidavit is not adequate to establish a genuine issue of material fact to contradict the longstanding fact in this case that the injuries and damage are not factually divisible.

The court will treat the damages as having been sustained equally over the four policy years. Since the damages are to be allocated equally among the four policy periods in which there were molestations, Interstate is entitled to full reimbursement of the funds it contributed to the settlement of Grgich's claim and for the costs it incurred in the defense of the Archdiocese.

### 3. *Interest and Attorney Fees*

■ Interstate moves the court for an award of prejudgment interest under O.R.S. 82.010(1)(a). O.R.S. 82.010(1)(a) provides for an award of prejudgment interest at the rate of nine percent per annum on all monies after they become due in a contract action where the exact amount of damages is ascertained or ascertainable, and the time from which the interest runs is easily ascertained. In *School Dist. No. 1 v. Mission Ins. Co.,* 58

Or.App. 692, 715, 650 P.2d 929 (1982), *rev. denied,* 294 Or. 682, 662 P.2d 725 (1983), the court held that an award of prejudgment interest to a school district was proper in an action brought by the school district against primary insurers where the school district sought reimbursement of the costs incurred in defending and settling the discrimination claims. An excess carrier is subrogated to all of the rights of the insured. *Id.* at 718, 650 P.2d 929. The fact that the allocation of damages was disputed does not prevent the award of prejudgment interest. *Id.* at 715, 650 P.2d 929. The court concludes here that Interstate is entitled to prejudgment interest.

■ Interstate also moves the court for an award of attorney fees under O.R.S. 742.061,[1] which provides, in relevant part:

> If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

As an equitable subrogee of the rights of the insured, Interstate is entitled to an award of reasonable attorney fees if it can show bad faith on the part of the Archdiocese and Lloyd's. *See Portland Gen. Elec. Co. v. Pacific Indem. Co.,* 579 F.2d 514, 516 n. 2 (9th Cir.1978). However, "[a]n excess carrier would have no right to attorney fees simply because the threat of excess liability led it to employ counsel or because a good faith dispute with the primary insurer led to litigation." *Id.* The court concludes that Interstate has not carried its burden to prove that the Archdiocese or Lloyd's acted in bad faith. Accordingly, the motion of Interstate for attorney fees is denied.

## CONCLUSION

The motion of Interstate for summary judgment (# 175) is granted; its motion for prejudgment interest is granted, and its motion for attorney fees is denied. Interstate shall prepare the appropriate judgment.

The motion of Interstate to strike the affidavit of Barry M. Maletsky, M.D. (# 192) is deemed moot.

---

1. Formerly O.R.S. 743.114; renumbered in 1989.