139 F.3d 1234
 98 Cal. Daily Op. Serv. 1661, 98 Cal. Daily
Op. Serv. 3629,
98 Daily Journal D.A.R. 2331,
98 Daily Journal D.A.R. 4995
 INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation,
Plaintiff-Appellee/ Cross-Appellant,
v.
UNDERWRITERS AT LLOYD'S, LONDON, et al., Defendants,
and
Archdiocese of Portland in Oregon, an Oregon corporation,
Defendant-Appellant/ Cross-Appellee.
INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation,
Plaintiff-Appellee,
v.
ARCHDIOCESE OF PORTLAND IN OREGON, an Oregon corporation, Defendant,
Underwriters at Lloyd's London, subscribing to Policy Nos.
SL 3391/SLC 54111 and SL 3831/SLC 5843; Excess Insurance
Co. Ltd., a United Kingdom corporation; Yasuda Fire and
Marine Insurance Company, Ltd. (U.K.), a United Kingdom
corporation; Terra Nova Ins. Co. Ltd., a United Kingdom
corporation; Universal Reinsurance Corp., a New Jersey
corporation, successor to Bellafonte Ins. Co., Defendants-Appellants.
 
 Nos. 96-35379, 96-35417 and 96-35450.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 11, 1997.
Decided March 9, 1998.
As Amended May 13, 1998.
 Timothy J. McNamara, Onebane, Donohoe, Bernard, Torian, Dias, McNamara & Abell, Lafayette, Louisiana; William D. Okrent, Holmes & Rickles, Portland, Oregon, for plaintiff-appellee/cross-appellant.
 Thomas V. Dulcich, Peter A. Ozanne, Schwabe, Williamson & Wyatt, Portland, Oregon, for defendant-appellant/cross-appellee; Leslie J. Rosen, Hugh C. Griffin, Lord, Bissell & Brook, Chicago, Illinois, for defendants-appellants.
 Appeal from the United States District Court For the District of Oregon; Helen J. Frye, District Judge, Presiding. D.C. No. CV-88-00934-HJF.
 Before: CANBY, T.G. NELSON and KLEINFELD, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 This case comes to our court for the second time. See Interstate Fire & Cas. Co. v. Archdiocese of Portland, 35 F.3d 1325, 1327 (9th Cir.1994) ("Interstate II "). The Archdiocese of Portland and Underwriters at Lloyd's, London ("Lloyd's") now appeal a district court order granting summary judgment in favor of Interstate Fire & Casualty Co. Interstate cross-appeals the district court's denial of an award of attorneys' fees. We have jurisdiction under 28 U.S.C. § 1291 (1994). We affirm both orders of the district court.
 
 BACKGROUND
 
 2
 Father Laughlin, once a priest for the Archdiocese, sexually molested Fred Grgich on numerous occasions between 1974 and 1983. In 1985, Grgich sued the Archdiocese. The most serious sexual activity took place during the years 1979-1983, and the Archdiocese's potential liability spanned those years. Grgich settled his lawsuit in 1986 for $500,000 plus attorneys' fees. The issue now in dispute is the proper apportionment of the burden of that settlement among the Archdiocese and its two insurers.
 
 
 3
 Lloyd's was the Archdiocese's primary insurer. The Lloyd's policy required the Archdiocese to maintain a Self-Insured Retention ("SIR") of $75,000 for each of the two years between July 1979 and July 1981; and $100,000 for each of the two years between July 1981 and July 1983. Lloyd's agreed to pay any amount of a covered claim in excess of the SIR to the policy limit of $200,000. Thus, Lloyd's provided $125,000 in coverage during the first two policy periods and $100,000 in coverage for the second two policy periods. See Interstate II, 35 F.3d at 1327.
 
 
 4
 Interstate was the excess insurer for the Archdiocese under a series of one-year policies from 1979 through 1983. It agreed to cover claims against the Archdiocese that exceeded the $200,000 limit of the combined Lloyd's/SIR coverage up to the policy limit of $5,000,000. Thus, Interstate provided $4,800,000 in excess coverage per year.
 
 
 5
 The parties initially contributed to the $500,000 settlement in the following proportions. Father Laughlin paid Grgich $50,000, the Archdiocese paid $74,997, Lloyd's paid $125,000, and Interstate paid $346,909.54.[1] The Archdiocese's contribution was roughly equivalent to its SIR for the first applicable policy period. Lloyd's contribution equalled its maximum coverage obligation for the same single policy period. Interstate's payment of the balance is what Interstate would have owed if the liability arose from a single occurrence during one of the policy periods.
 
 
 6
 About two years after the Grgich settlement, Interstate sued the Archdiocese and Lloyd's, alleging that it was entitled to reimbursement of its contribution to the settlement fund. Each party filed motions for summary judgment. At issue was whether the injuries suffered by Grgich were caused by a single occurrence, as the term is used in the applicable policies, or by multiple occurrences. Interstate Fire & Cas. Co. v. Archdiocese of Portland, 747 F.Supp. 618, 619-21 (D.Or.1990) ("Interstate I "). If Grgich's injuries were caused by a single occurrence, then the case involved only one policy period and, therefore, each party would have paid its fair share to the settlement fund. If the injuries were caused by multiple occurrences spanning more than one policy year, then Lloyd's and the Archdiocese should have contributed for each of the applicable policy periods. If the occurrences spanned three or more policy periods, Interstate would be entitled to a full reimbursement.
 
 
 7
 The district court held that Grgich's injuries resulted from a single occurrence: the Archdiocese's negligent supervision of Father Laughlin. The court therefore granted summary judgment in favor of the Archdiocese and Lloyd's. Id. at 625. On appeal, this court reversed the district court, holding that Grgich's injuries resulted from multiple occurrences in the form of Grgich's exposure to Father Laughlin's advances in each policy period. Interstate II, 35 F.3d at 1329-30. We then remanded to the district court for a determination whether Interstate had reserved its right to dispute coverage and, if so, for an apportionment of the damages. Id. at 1331.
 
 
 8
 On remand, the district court held that Interstate had expressly reserved its right in a letter sent to the Archdiocese and Lloyd's just prior to the start of settlement negotiations. Interstate Fire & Cas. Co. v. Archdiocese of Portland, 899 F.Supp. 498, 501 (D.Or.1995) ("Interstate III "). Further, Interstate had not waived its right by participating in the settlement process and making payments without reiterating its reservation of rights. Id. The district court also concluded that the Archdiocese and Lloyd's were judicially estopped from asserting that Grgich's damages should be disproportionately divided among the several policy periods. Id. at 502. Accordingly, the district court awarded Interstate an amount equal to its contribution to the settlement fund plus prejudgment interest. Id. at 502-03. The district court declined to grant Interstate an award of attorneys' fees. Id. at 503.
 
 
 9
 The Archdiocese and Lloyd's appeal the award to Interstate; Interstate appeals the denial of attorneys' fees. We affirm the district court in all respects.[2]
 
 DISCUSSION
 I. Reservation of Right to Contest Coverage
 
 10
 A few days prior to entering settlement negotiations, Interstate sent a letter to the Archdiocese and Lloyd's stating:
 
 
 11
 [T]here is a serious question as to whether or not one or more "retentions" [or SIRs] may apply to the Grgich claim, since the molestations occured [sic] over several policy periods....
 
 
 12
 ....
 
 
 13
 In engaging in the settlement discussions we are reserving all of our rights with respect to the questions of coverage or reallocation of any settlement money spent by us in the settlement of the Grgich claim on our policies with the Diocese of Portland, Oregon.
 
 
 14
 We agree with the district court that this letter effectively reserved Interstate's right to contest its liability for any of the settlement payment. The defendants argue that the reservation is equivocal, and limited by the phrase "[i]n engaging in the settlement discussions." As defendants would have it, the latter phrase precludes the reservation from extending to the conclusion of the settlement itself. This argument, however, ignores the unmistakable meaning of Interstate's reservation of rights "with respect to ... reallocation of any settlement money spent by us in settling the Grgich claim." (Emphasis added). This language reserves to Interstate the right to pursue the reallocation it seeks in this litigation.
 
 
 15
 We also reject the contention of the Archdiocese and Lloyd's that summary judgment was improper because of the evidence that Interstate's claims representative said that, upon conclusion of the settlement, he would be "closing [his] file," or by the fact that Interstate paid the Archdiocese's defense costs after the settlement. Waiver is the intentional relinquishment of a known right, and "must be manifested in an unequivocal manner." Hohman v. Bartel, 128 Or.App. 384, 387, 876 P.2d 347, 348 (1994). The reference to closing the file is most reasonably understood as pertaining to the Grgich claims file, which was indeed being closed by the settlement. The paying of defense costs presents a closer question, but it can be viewed as part of the settlement process; it does not show an unequivocal waiver of the earlier reservation.
 
 
 16
 Nor did Interstate waive its reservation, or subject itself to estoppel, by negotiating and providing funds for the settlement. See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp., 932 F.2d 442, 445 (5th Cir.1991) (indemnity insurer who negotiated and paid for settlement not estopped to deny coverage). The parties agree that Interstate's policy was an indemnity policy, and that Interstate assumed no contractual duty to defend claims against the Archdiocese. The district court ruled that, because Interstate had no duty to defend and did not defend, it was unnecessary for it to reserve its right to contest coverage. We need not address, however, the question whether an indemnity insurer must, under Oregon law, reserve its rights if it negotiates and pays for a settlement, because Interstate in fact did reserve its rights in the letter quoted above. Even if Interstate's position in negotiating and participating in the settlement could be analogized to defending the action,[3] Oregon law would permit the reservation. "The general rule is well established that an indemnity insurer will not be estopped to set up the defense of nonliability by reason of having participated in defense of the action against the insured if it has given timely notice to the assured that it does not waive the benefit of such defense." Clark Motor Co. v. United Pac. Ins. Co., 172 Or. 145, 155, 139 P.2d 570, 574 (1943).
 
 
 17
 The Archdiocese and Lloyd's rely on Val's Painting and Drywall, Inc. v. Allstate Ins. Co., 53 Cal.App.3d 576, 126 Cal.Rptr. 267 (1975), in which the court held that an insurer who initially reserved its rights waived them by settling the case and disbursing the settlement payment. The court in Val's Drywall did not, however, hold that an insurer could not reserve its rights under those circumstances; it held only that Allstate had not pleaded facts indicating that it had done so in that case.[4] Allstate had announced its intention to reserve its rights in "making any settlement," but had not alleged that it advised the insured of the settlement or that the insured agreed to the sum. Id. at 588, 126 Cal.Rptr. at 274. The court stated that the reservation of rights did not give Allstate "carte blanche to settle the case with what will turn out to be the insured's own money." Id. If the insured did not agree to the expenditure of its money, "the insurer is not permitted to seek reimbursement for a particular settlement unless it has secured specific authority to make that settlement or has notified the insured of a reasonable offer by the claimant and given the insured an opportunity to assume the defense." Id.
 
 
 18
 In the present case, Interstate has met all of these conditions, and the settlement does not present any of the dangers that the court sought to avoid in Val's Drywall. The Archdiocese and Lloyd's not only knew of the settlement offer, they endorsed it, and the Archdiocese threatened to sue Interstate for bad faith dealing if it did not participate in the settlement. All parties agree that the settlement was reasonable. There was thus a total lack of evidence that "the insured relied upon [Interstate's] conduct to [its] detriment." Id. at 587, 126 Cal.Rptr. at 273.
 
 
 19
 Most important, the Archdiocese and Lloyd's not only participated in the settlement; they were both represented by their own counsel wholly independent of Interstate. The principle underlying the cases requiring a reservation of rights by an insurer who participates in the defense of a claim is to protect the insured from conflicts of interest. The reservation alerts the insured that it may need to employ its own counsel. See Arkwright-Boston, 932 F.2d at 445. Because the Archdiocese and Lloyd's already had their own counsel, there was no such danger of conflict of interest in this case. We conclude, therefore, that Interstate's negotiation of, and participation in, the settlement did not waive Interstate's claim for reimbursement, nor did it estop Interstate from asserting that claim.
 
 II. Judicial Estoppel
 
 20
 As we have said, Grgich's claim implicated four policy periods, from July 1979 to July 1983. If Grgich's injuries are divided equally among the four applicable periods, then the Archdiocese's SIRs combined with Lloyd's primary coverage would satisfy the entire settlement amount. If, however, Grgich sustained most of his injuries during a single policy period, then Interstate, as the excess insurer for that policy period, would be responsible for paying a portion of the settlement costs. For this reason, the Archdiocese and Lloyd's sought on remand to introduce evidence that Grgich incurred most of his damages at the time of the first serious incidents, during the first policy period.
 
 
 21
 The district court, however, held that the Archdiocese and Lloyd's were judicially estopped from asserting that damages occurred more heavily in one policy period than in another, because of the posture they adopted in Interstate I. We uphold the decision of the district court.[5]
 
 
 22
 In a proposed pretrial order submitted to the district court prior to its ruling in Interstate I, the parties stipulated that "[t]here is no factual basis upon which to divide the personal injury or resulting damages among the policy periods." Although the district court apparently never signed the proposed order, the case proceeded on the assumption that it had been adopted. The district court recited the stipulated facts in its opinion granting summary judgment for the Archdiocese and Lloyd's. See Interstate I, 747 F.Supp. at 621; see also Interstate III, 899 F.Supp. at 502. Thus, in filing cross-motions for summary judgment, the parties presented the district court with an all-or-nothing decision: either (1) there was a single occurrence and Interstate was liable for the full amount it had advanced, or (2) there were multiple occurrences over four years and no means of apportioning damages, so Interstate was entitled to its full reimbursement. The district court chose the first option-a single occurrence-but we reversed the decision and remanded for further proceedings. The district court has now chosen the second option.
 
 
 23
 The district court held that the Archdiocese and Lloyd's were judicially estopped from deviating from their prior position. Judicial estoppel precludes a party from taking inconsistent positions in the same litigation. Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993). A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent statement, and we have recently adopted that rule. See Masayesva v. Hale, 118 F.3d 1371, 1382 (9th Cir.1997).
 
 
 24
 The Archdiocese and Lloyd's contend that, even though the district court and this court recited the stipulated fact that there was no factual basis for dividing the personal injury or damage to Grgich among the various policy years, see Interstate I, 747 F.Supp. at 621; Interstate II, 35 F.3d at 1331, neither court relied on that fact in its decision. Indeed, our opinion on the prior appeal explicitly refused to deal with apportionment of damages (despite the stipulation) because any ruling might be unnecessary if the district court on remand held that Interstate had waived its reservation of rights. Interstate II, 35 F.3d at 1331.
 
 
 25
 We need not resolve the arguable question whether the district court, in ruling in Interstate I that there had been a single occurrence, relied in any degree on the stipulated fact that damages were not apportionable factually among the policy years. Nor need we determine the effect of reversal of the district court's decision if there was such reliance. We may affirm the district court's judgment on any ground fairly presented by the record. Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc., 810 F.2d 869, 874 (9th Cir.1987). The Archdiocese and Lloyd's did not merely take a position before the district court; they stipulated to a fact in a proposed pretrial order that governed the proceedings. "In light of the passage of time, the nature of the remand, and the general rule that parties are generally bound by pretrial orders unless they are modified, the trial court could reasonably hold [the Archdiocese and Lloyd's] to the stipulated pretrial order." Convoy Co. v. Sperry Rand Corp., 672 F.2d 781, 787 (9th Cir.1982); see In re Cement and Concrete Antitrust Litigation, 817 F.2d 1435, 1442 (9th Cir.1987) (parties held to stipulation of fact from which the court had not granted them relief); Jauregui v. City of Glendale, 852 F.2d 1128, 1133-34 (9th Cir.1988) (same; stipulated pretrial order).
 
 
 26
 Judicial estoppel is a discretionary doctrine, see Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993), and the district court in its discretion applied it against the Archdiocese and Lloyd's. In light of that ruling, there is no reason to doubt that the district court would similarly exercise its discretion to hold those parties to the stipulated pretrial order. We therefore affirm the decision of the district court rejecting the attempt of the Archdiocese and Lloyd's to allocate damages disproportionately among policy years.
 
 III. Prejudgment Interest
 
 27
 Under Oregon law, prejudgment interest begins to accrue when monies become due. See Or.Rev.Stat. 82.010(1)(a) (1995). The district court calculated prejudgment interest from the date on which Interstate contributed to the settlement fund, August 19, 1986. The defendants contend, however, that the money did not become due until Interstate demanded payment by filing suit on August 15, 1988.
 
 
 28
 We conclude that the district court was correct. In comparable circumstances, the Oregon Supreme Court held that payments became due among competing insurers as soon as an insurer became obligated to make payments under the terms of its policy-not later when contribution was demanded of it. Hartford Fire Ins. Co. v. Aetna Ins. Co., 270 Or. 226, 527 P.2d 406, 412 (1974).
 
 
 29
 In this case, all three parties were obligated to contribute to the settlement fund, if at all, on August 19, 1986. Thus, the money was due (and the interest began to accrue) on that date. Accordingly, we affirm the district court's conclusion that prejudgment interest began to accrue on August 19, 1986.
 
 
 30
 The defendants also challenge the award of prejudgment interest on the ground that the amount owed was neither ascertained nor ascertainable. However, an amount may be ascertained or ascertainable even if litigants disagree about whether and how to divide that amount. Forest Indus. Ins. Exch. v. United States Fidelity & Guar. Co., 80 Or.App. 724, 723 P.2d 381, 386 (1986) (awarding prejudgment interest even though insurers disputed coverage and apportionment); Bollam v. Fireman's Fund Ins. Co., 76 Or.App. 267, 709 P.2d 1095, 1100 (1985) (awarding prejudgment interest even though insured and insurer disputed coverage), rev'd on other grounds, 302 Or. 343, 730 P.2d 542 (1986); see also Interstate Prod. Credit Assoc. v. Fireman's Fund Ins. Co., 788 F.Supp. 1530, 1543 (D.Or.1992) (declining to award prejudgment interest because the parties disputed both liability and the amount of damages). In this case, although the parties have continuously disagreed about who should pay and why, they have never disputed the amount in question. Thus, the district court's award of prejudgment was appropriate.
 
 IV. Attorneys' Fees
 
 31
 Interstate demands attorneys' fees from Lloyd's. Oregon law provides that a plaintiff may recover attorneys' fees from an insurer in any insurance policy dispute if the plaintiff's recovery exceeds the amount of any tender made by the insurer. Or.Rev.Stat. 742.061 (1995). An insurer may claim attorneys' fees under the statute if it is suing another insurer in the place of an insured. See School Dist. No. 1 v. Mission Ins. Co., 58 Or.App. 692, 650 P.2d 929, 946 (1982); Fick v. Dairyland Ins. Co., 42 Or.App. 777, 601 P.2d 868, 870 (1979). However, "[a]n excess carrier [has] no right to attorney fees simply because ... a good faith dispute with the primary insurer led to litigation." Portland Gen. Elec. Co. v. Pacific Indem. Co., 579 F.2d 514, 516 n. 2 (9th Cir.1978). In this case, Interstate is not suing Lloyd's on behalf of the Archdiocese. Accordingly, the district court correctly reasoned that Interstate was not entitled to attorneys' fees from Lloyd's.
 
 
 32
 Interstate also claims attorneys' fees from the Archdiocese, alleging that the Archdiocese is an "insurer" for the purposes of Or.Rev.Stat. 742.061 because it was partially self-insured. According to Oregon law, an "insurer" must be "engaged in the business of entering into policies of insurance." Or.Rev.Stat. 731.106 (1995). The Archdiocese clearly does not qualify. The district court did not err in denying fees.
 
 CONCLUSION
 
 33
 Interstate was entitled to contest its coverage obligations under its policy with the Archdiocese. The district court did not err in precluding the Archdiocese and Lloyd's from establishing that Grgich's injuries disproportionately fell within the first policy year in issue. The district court properly calculated prejudgment interest, and correctly denied Interstate's claim for attorneys' fees.
 
 
 34
 The parties will bear their own costs on appeal.
 
 
 35
 APPEAL AND CROSS-APPEAL AFFIRMED.
 
 
 
 [1]
 The total amount paid, $596,906.54, includes $96,906.54 in fees and defense costs
 
 
 [2]
 We review de novo the district court's grant of summary judgment. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989)
 
 
 [3]
 But see Arkwright-Boston, 932 F.2d at 445 ("We have found no authority for the proposition that an insurer's participation in settlement negotiations, where the insured has retained independent counsel, is tantamount to assuming the assured's defense")
 
 
 [4]
 Allstate was allowed to replead because it might be able to support its claim by including "essential allegations as to the extent of Val's participation in the settlement." Id. at 589, 126 Cal.Rptr. at 274
 
 
 [5]
 Because of our disposition of this issue, we find it unnecessary to address the district court's alternative ground for rejecting the claim of disproportionate damages-that the expert evidence in support of the claim proffered by the Archdiocese and Lloyd's was inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)