**Tina BAUGHMAN, Plaintiff,**

v.

**WALT DISNEY WORLD COMPANY, Defendant.**

**Case No.: SACV 07–01108–CJC(MLGx).**

United States District Court,
C.D. California,
Southern Division.

Feb. 26, 2010.

David G. Geffen, Law Firm, Santa Monica, CA, for plaintiff.

Laura B. Fleming and Daniel L. Rasmussen, Payne and Fears LLP, Irvine, CA, Ezra J. Reinstein and Julie J. Bisceglia, Payne and Fears LLP, Los Angeles, CA, for defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING TO STATE COURT**

CORMAC J. CARNEY, District Judge.

Plaintiff Tina Baughman has a degenerative muscular disease that makes it difficult for her to walk or rise from a seated position. She uses a Segway, a two-

wheeled self-balancing motorized device, for transportation. When Defendant Walt Disney World Co. ("Disney") refused to allow Ms. Baughman to use her Segway at Disneyland Park ("Disneyland"), Ms. Baughman brought this action under the Americans with Disabilities Act ("ADA") and various California laws. Ms. Baughman seeks a modification of Disney's policy prohibiting Segway use so that she may operate her Segway in the park. Disney now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that Ms. Baughman's requested modification is neither necessary nor reasonable. Ms. Baughman also moves for summary judgment under Rule 56, arguing that her requested modification is reasonable. For the following reasons, Disney's motion for summary judgment is GRANTED as to Ms. Baughman's ADA claim, and Ms. Baughman's motion for summary judgment on that claim is DENIED. Because only state law claims remain after judgment on the ADA claim, the rest of Ms. Baughman's claims are remanded to state court.

## BACKGROUND

Ms. Baughman has limb girdle muscular dystrophy, a degenerative disease that causes a weakening of large muscles. (Baughman Dep., Def.'s Ex. F ("Ex. F'") at 11:14–25.) Because of this disease, Ms. Baughman has difficulty walking and getting up from a seated position. (Compl. ¶ 5; Ex. F at 25:19–26:1.) For transportation, she uses a Segway, a two-wheeled self-balancing motorized transportation device that she rides in a standing position. (Compl. ¶ 6; Hale Decl. ¶ 4.) She has never used a wheelchair. (Ex. F at 33:9; Baughman Decl. ¶ 3.)

Disneyland is fully accessible by wheelchair and motorized scooter. (Hale Decl. ¶¶ 3, 7.) Due to safety concerns, Disney has a policy that prohibits guests from using two-wheeled transportation devices, including Segways, in Disneyland. (Compl. ¶ 6; Hale Decl. ¶ 5.) Disney does, however, allow guests to use Segways during guided tours of Disney's California Adventure Park, which is adjacent to Disneyland, during early morning hours before general public admittance. (Hale Decl. ¶ 6.) Disney also permitted guests to test-drive Segways at Disneyland under supervision in a roped off area in the park from December 2003 to February 2005 and from February 2008 to September 2008. (Hale Decl. ¶ 6.)

On May 18, 2006, Ms. Baughman wrote to Disney, requesting permission to use her Segway in the park for a birthday visit for her eight year-old daughter. (Ex. F at 68:8–17; Ex. B.) After a telephone conversation with Ms. Baughman, a Disney representative informed Ms. Baughman by letter on June 20, 2006, that Disney would not be able to honor her request because of safety concerns. (Ex. E.) Ms. Baughman did not visit Disneyland for her daughter's birthday. (Ex. F at 67:11–13, 68:3–7.)

On August 6, 2007, Ms. Baughman brought suit against Disney in Orange County Superior Court, alleging violations of the ADA and California state law. Disney removed the action to federal court under federal question jurisdiction.

On January 9, 2009, the Court granted Disney's application to stay the case pending the resolution of *Ault v. Walt Disney World Co.*, Case No. 6:07–cv–1785–Orl–31KRS, a class action lawsuit filed by Segway users with disabilities against Disney in the United States District Court for the Middle District of Florida. The class representatives had entered into a preliminary settlement with Disney, and the *Ault* court certified the class for settlement purposes. Ms. Baughman, a member of the class, objected to the settlement. After holding a two-day fairness hearing, the *Ault* court dismissed the case on October

6, 2009, for lack of standing. The court found that because the class plaintiffs could use wheelchairs or motorized scooters, their injuries fell outside the "zone of interests" protected by the ADA. *Id.* After dismissal of the *Ault* action, litigation in this case resumed. Before the Court now are the parties' cross motions for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper if the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. 2548; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

**ANALYSIS**

■ The ADA prohibits discrimination against people with disabilities in places of public accommodation. 42 U.S.C. § 12182(a). Under the statute, discrimination includes

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations ...

*Id.* at § 12182(b)(2)(A)(ii). In order to prevail, plaintiffs must show that the requested modification to a policy, practice, or procedure is both necessary and reasonable. *Id.*; *PGA Tour v. Martin,* 532 U.S. 661, 682, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001).

■ For a requested modification to be necessary, a plaintiff must show that she would be effectively excluded from the public accommodation without the modification. *Lentini v. Cal. Center for the Arts, Escondido,* 370 F.3d 837, 845 (9th Cir. 2004). Disney argues that Ms. Baughman's requested modification is unnecessary because she can use a wheelchair or scooter, and that she is judicially estopped from arguing that she cannot use a wheelchair or scooter because she has litigated as a wheelchair and scooter user in the past.[1]

---

**1.** Disney also argues that Ms. Baughman lacks standing to sue under the ADA. Ms. Baughman has standing in this case. She has alleged an injury-in-fact that is caused by Disney's actions and that is redressable by the

■ Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court has identified three factors that must be addressed when determining whether to apply the principle in a particular case: 1) whether the party's later position is "clearly inconsistent" with the earlier position, 2) whether the party has succeeded in persuading a court to accept that party's earlier position, so as to create the perception that either the first or second court was misled, and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party. *Id.* at 750–51, 121 S.Ct. 1808. Judicial estoppel bars litigants from taking inconsistent positions within the same case or in different cases. *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir.2009). Furthermore, in the Ninth Circuit, judicial estoppel applies only if the second factor, acceptance by a court, is met. *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir.1998).

In a lawsuit against Sav–On Drugs filed on September 21, 2005, in Los Angeles County Superior Court, Ms. Baughman asserted in her complaint that she "has a physical impairment which causes her to rely upon a power scooter or wheelchair for her mobility." (Request for Judicial Notice ("RJN") Ex. 1, ¶ 6.) In another lawsuit brought against Santa Monica Ford on June 13, 2006, in Los Angeles County Superior Court, Ms. Baughman asserted that she "has a physical impairment which causes her to rely upon a power scooter or wheelchair for her mobility." (RJN Ex. 2, ¶ 6.) Additionally, the expert report submitted by Ms. Baughman in the Santa Monica Ford case outlined modifications that were necessary for wheelchairs to enter and maneuver in the dealership's restrooms. (Ex. G to Rygh Decl.) On November 16, 2006, Ms. Baughman sued the California Department of Motor Vehicles ("DMV") in Los Angeles County Superior Court, again claiming that she "has a physical impairment which causes her to rely upon a power scooter or wheelchair for her mobility." (RJN Ex. 3, ¶ 6.) In her prior cases, she also alleged that her disability substantially limits her ability to stand and that the faucets and fixtures in the restrooms were too high off the floor. (RJN Ex. 1, ¶ 16; RJN Ex. 2, ¶¶ 8, 16; RJN Ex. 3, ¶ 9.) In response to Ms. Baughman's lawsuits, all of the defendants agreed to modify their premises. (Geffen Decl. ¶ 4.) Ms. Baughman also received monetary settlements in the DMV and Santa Monica Ford cases. (Ex. F at 84:17–20, 87:2–4.) Disney argues that based on these prior complaints, Ms. Baughman is barred from arguing that she cannot use a wheelchair or scooter. The Court agrees.

All of the *New Hampshire* factors weigh heavily in favor of applying judicial estoppel in this case. First, Ms. Baughman's prior litigation positions are clearly inconsistent with her current position. In this case, Ms. Baughman says she needs a

court. Her alleged injury—the inability to access a place of public accommodation because of her disability—is within the "zone of interests" of the ADA, a statute enacted to prohibit discrimination against people with disabilities. *See* 42 U.S.C. § 12182(a). Disney's arguments about whether Ms. Baughman's requested modification is necessary go to the merits of her claim, not to whether she has standing.

Segway because she is unable to rise from a seated position and thus cannot use a wheelchair or scooter. Indeed, she says she has "never used a wheelchair." (Ex. F at 33:9; Baughman Decl. ¶ 3.) Conversely, in three prior lawsuits filed a within two years of this case, Ms. Baughman asserted that she relies on a wheelchair or scooter for her mobility. In those cases she also said she had difficulty standing and that the fixtures in the bathrooms were too high off the floor. Her expert in one case explained how modifications could be made to the restrooms to allow access to people in wheelchairs. Ms. Baughman's current position that she cannot use and has never used a wheelchair is therefore clearly inconsistent with her prior position that she relies on a wheelchair for her mobility.

Second, Ms. Baughman received monetary relief in two of her previous cases and obtained equitable relief in the form of changes to the facilities in all three of her prior cases. In the Ninth Circuit, courts view favorable settlements as equivalent to succeeding in persuading a court of the party's position. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604–05 (9th Cir.1996) ("We are thus confronted with the question whether obtaining a favorable settlement is equivalent to winning a judgment for purposes of applying judicial estoppel. We answer in the affirmative.").

Third, Ms. Baughman will receive an unfair advantage and impose an unfair detriment on Disney if she is not estopped from litigating her contradictory position in this case. She obtained three settlements in her prior cases based on her assertion that she relies on a wheelchair or scooter. It is unclear what the result of those cases might have been had she brought them as a Segway user instead of a wheelchair or scooter user. She now seeks a "second benefit" by arguing that she cannot use and has never used a wheelchair or scooter, and thus must use a Segway. Moreover, Disney should not have to incur expense and disrupt its operations to modify its policy if Ms. Baughman can use a wheelchair or scooter as she represented in three prior litigations.

Ms. Baughman nevertheless argues that the Court should overlook and not be concerned about her representations in prior court pleadings because those representations were "pleading errors" by her attorneys. The Court cannot do so. Ms. Baughman claimed that she uses a wheelchair or scooter in not just one, but *three* prior lawsuits. In two cases, she even received monetary settlements based on the assertions in her complaints. Her claim that her prior statements were merely mistakes is not supported by the evidence or common sense—the entire point of Ms. Baughman's prior ADA cases was that she could not access facilities because she used a wheelchair or scooter. Ms. Baughman also contends that opposing counsel in those cases knew she did not use a wheelchair. The attorney that represented Santa Monica Ford in Ms. Baughman's case, however, stated that he never met or saw Ms. Baughman and that the main issue in the case was the dealership's accessibility to people in wheelchairs. (Rygh Decl. ¶¶ 3, 4.) Furthermore, the expert report submitted by Ms. Baughman in that case implied that she was in a wheelchair. (Ex. G to Rygh Decl.) Accordingly, as part of the settlement, Santa Monica Ford agreed to make its restrooms accessible to people in wheelchairs. (Rygh Decl. ¶ 6.)

Ms. Baughman also argues that her prior statements about her reliance on a wheelchair or scooter are not inconsistent with her current position that she needs a Segway because she never claimed that she could rise independently from the wheelchair in the prior lawsuits or because

her disease has now degenerated to a point that she cannot use a wheelchair. The problem with these arguments is that they contradict the representations that Ms. Baughman made in her three prior pleadings and in both her deposition and declaration in this case. In her three prior complaints, Ms. Baughman represented that she "has a physical impairment which causes her to rely upon a power scooter or wheelchair for her mobility." (RJN Ex. 1, ¶ 6; RJN Ex. 2, ¶ 6; RJN Ex. 3, ¶ 6.) There was no qualification or caveat to her representation. The suggestion that Ms. Baughman meant to convey to the reader that she relies on a wheelchair with the assistance of another to lift her in and out of it is disingenuous, especially when one considers the nature of those three prior litigations and the significant equitable and monetary relief Ms. Baughman obtained in them. And in her deposition in this case, Ms. Baughman testified under oath that she *never used* a wheelchair, thereby dispelling the notion that she needed a person to assist her to get in and out of the wheelchair or that her disability has degenerated to a point that she can no longer use a wheelchair. The Court simply will not allow Ms. Baughman to play fast and loose with the facts. *See United Nat. Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 778 (9th Cir.2009) (stating that judicial estoppel "was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position.").

Ms. Baughman said in her three prior lawsuits that she uses a wheelchair. She now is estopped from contending in this lawsuit that she cannot do so. While the Court is sympathetic to Ms. Baughman's understandable preference for the Segway, Ms. Baughman may not now argue that her Segway is necessary because she cannot use a wheelchair or scooter when she has repeatedly stated the opposite. The Court is left wondering whether Ms. Baughman was dishonest when she asserted that she relies on a wheelchair in the prior cases or whether she is now being dishonest when she says she cannot use and has never used a wheelchair. As Ms. Baughman is judicially estopped from claiming that she cannot use a wheelchair, her requested modification is not necessary and Disney is entitled to summary judgment on her ADA claim.[2]

 Because the Court is granting summary judgment on Ms. Baughman's ADA claim, only Ms. Baughman's state law claims remain. Specifically, Ms. Baughman brings claims under the Unruh Act, California Civil Code Section 51, and the California Disabled Persons Act ("CDPA"), California Civil Code Section 54 and 54.1. A district court may decline to exercise supplemental jurisdiction over a related state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-

---

2. The Court also notes that Ms. Baughman's admissions in this case that she can sit for periods of time, enter and exit her car without assistance, and stand from a seated position if the seat is high enough and there is something for her to push on while rising cast doubt on her claim that she cannot use a wheelchair. (Ex. F at 24:17–25:21, 70:2–15.) She also says she wants to use a Segway so

she can better keep up with her kids and because she hates to be sitting down and looking at peoples' backs. (Ex. F at 103:1–21, 36:12–19.) Indeed, in her complaint in this case, Ms. Baughman does not say that she cannot use a wheelchair or scooter, only that the Segway is "by far the best suited for her mobility and her ability to travel long distances." (Compl. ¶ 6.)

footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* As the Ninth Circuit noted, "[i]n the *usual* case in which federal law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state law claims." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996) (citations omitted).

Here, there are important and novel issues of state law that are more appropriately considered by a state court. While this Court has found that Ms. Baughman is judicially estopped from arguing that a Segway is necessary, California law may protect Ms. Baughman's strong preference for the Segway. The Unruh Act protects "full and equal accommodations" without regard to disability or medical condition. CAL. CIV.CODE 51(b). The CDPA protects "full and equal access" to public accommodations for people who have disabilities. CAL. CIV.CODE 54.1(a)(1). Unlike the ADA, the relevant portions of these statutes do not contain the word "necessary." Whether the protections of the Unruh Act and CDPA are greater than those in the ADA is a novel question of state law, and is one that "attracted the attention of the California Attorney General and several disability rights organizations" in a recent case where the California Court of Appeal ultimately declined to address the issue for procedural reasons. *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App.4th 571, 587, 81 Cal.Rptr.3d 144 (Cal. Ct.App.2008). Such important issues of state law are best decided by state courts. The Court therefore declines to exercise supplemental jurisdiction over Ms. Baughman's remaining state law claims.

**CONCLUSION**

For the foregoing reasons, Disney's motion for summary judgment is GRANTED as to Ms. Baughman's ADA claim, and Ms. Baughman's motion for summary judgment on that claim is DENIED. The rest of Ms. Baughman's claims are remanded to state court.